## FOURTH DEPARTMENT, OCTOBER, 1976

### (October 29, 1976)

In the Matter of GANNETT CO., INC., Petitioner, v DONALD J. MARK, as Judge of the Monroe County Court, et al., Respondents.—Petition unanimously granted, without costs, and respondent's order vacated to the extent that it excludes the public and the press from the evidentiary hearing. Memorandum: Following Richard Marino's well-publicized trial, he was found guilty of murder and conspiracy. Subsequently he moved pursuant to CPL 330.30 and 330.40 to set aside the verdict, alleging judicial error, prosecutorial and police misconduct, juror partiality and prejudice, and newly discovered evidence. Respondent, Hon. Donald J. Mark, Monroe County Court Judge, directed a hearing on the motion but prior to its commencement ordered, *sua sponte,* the public and the press to be excluded. Petitioner owns two local newspapers and a television station, all of which extensively reported Marino's trial and pretrial proceedings. Although respondent did not alter the order of closure after affording petitioner an opportunity to be heard in opposition, he stayed the hearing on Marino's motion, pending a review by this tribunal. Thereupon petitioner commenced this article 78 proceeding, seeking to vacate and prohibit enforcement of respondent's order insofar as it precludes the public and press from attending the evidentiary hearing. Petitioner contends, *inter alia,* that the exclusionary order violates section 4 of the Judiciary Law and the constitutional guarantee of a public trial (US Const, 6th Amdt). This position, of course, conflicts with the clear right of a Trial Judge to close his courtroom in a criminal case in the interests of sound judicial administration (see *People v Hinton,* 31 NY2d 71; see, also, *People v Jelke,* 308 NY 56). In such a context

it is first necessary to determine the standing of petitioner to seek relief by way of prohibition. Surely any right of defendant Marino to a public trial cannot be seized upon by petitioner. In the order here under review, where both the public and the press are denied access to the proceedings, petitioner's rights are neither more nor less expansive than those of the public at large (cf. *Matter of Oliver v Postel,* 30 NY2d 171; cf., also, *Matter of United Press Assns. v Valente,* 308 NY 71). The trial court, however, properly exercised its discretion in granting standing to petitioner in light of the gravity of the harm it would suffer from the order of closure and the absence of any other meaningful remedy to restrain the court from exceeding its powers (*La Rocca v Lane,* 37 NY2d 575; see, also, *Matter of New York Times Co. v Starkey,* 51 AD2d 60). If a court "acts or threatens to act in excess of its powers, and it affirmatively appears that this will be done in violation of a person's, even a party's, rights, but especially constitutional rights, prohibition will lie to restrain the excess of power". *(La Rocca v Lane, supra,* p 580.) Furthermore, petitioner is not foreclosed from use of the remedy because the court, upon reaching the merits, may decide the issue adversely to petitioner (*La Rocca v Lane, supra,* p 581). We turn then to the issue of whether respondent properly exercised his discretionary power to close the proceedings to the public and press. In a memorandum respondent relies strongly upon the "policy of this state to maintain secrecy of jury room deliberations". While the propriety of the order granting the defendant's motion for such a hearing on the partiality and ineligibility of jurors is not before us (see *People v De Lucia,* 20 NY2d 275), the fact that it was granted eliminates that averred policy as an issue at this time. In finding defendant Marino's allegations to be of such merit as to warrant a hearing, to some extent respondent has opened those deliberations to review (see *People v Leonti,* 262 NY 256; *People v Tobias,* 51 AD2d 654). In his memorandum respondent further asserts that his closure order is designed to: minimize possible embarrassment to jurors if confronted with allegations of misconduct; "prevent a partisan audience from attempting to intimidate and/or harass a possible witness"; and lessen the temptation of the attorneys "to make editorial comments for the benefit of the public and/or the press". These are at best speculative reasons which do not rise to the level of actual intimidation or harassment found to justify exclusion in other cases (see, e.g., *United States ex rel. Orlando v Fay,* 350 F2d 967). Nor does the broad exclusionary order issued here take into account an available limited directive to deal with a particular disruption with which a court is actually confronted during the hearing (see, e.g., *United States ex rel. Bruno v Herold,* 408 F2d 125). The right of a Trial Judge to exclude the public and press from a courtroom constitutes an exception to the general rule requiring open judicial proceedings *(People v Jelke, supra,* p 63) and may only be employed as a response to compelling factual circumstances. The discretionary judgment which bars the doorway to a courtroom must be "sparingly exercised and then, only when unusual circumstances necessitate it" *(People v Hinton,* 31 NY2d 71, supra, pp 75–76; *People v Devine,* 80 Misc 2d 641). Respondent's order is overbroad and premature. We caution, however, that nothing herein should be construed as restraining the trial court from exercising its responsibility to preserve the dignity, order and decorum of the courtroom, and to take whatever action is appropriate, should circumstances develop, to deal with disruption of its proceedings or with intimidation of witnesses. We direct that the hearing should not proceed until the

completion of the trial of *People v De Francesco,* which is presently being conducted. (Article 78 proceeding.) Present—Marsh, P. J., Simons, Mahoney and Dillon, JJ. (Decided Oct. 6, 1976.)