Bonnie **PECHTER,** Larraine Schumsky, Irving Greenberg, Lucy Dawidowicz, Henry Feingold, Jane Gerber and Robert Rosen, **Plaintiffs,**

v.

Francis J. **LYONS,** Immigration Judge, **Defendant.**

**77 Civ. 5190.**

United States District Court, S. D. New York.

Nov. 8, 1977.

New York Civil Liberties Union by David Rudenstine, New York City, for plaintiffs.

Robert B. Fiske, Jr., U.S. Atty. for the Southern Dist. of New York by Thomas H. Belote, Asst. U.S. Atty., New York City, for Immigration and Naturalization Service.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiffs are members of the general public. Defendant Lyons is a United States Immigration Judge. This proceeding concerns the right of the public to attend an Immigration and Naturalization Service (INS) deportation hearing; the issue is whether the immigration judge presiding over the deportation hearing of one Boleslavs Maikovskis acted within his discretion in denying the public that right.

Maikovskis is charged with having concealed his Nazi past, including the alleged commission of atrocities, when he entered this country in the early 1950's. The revelation of the charges has occasioned strong feelings against him in certain quarters, manifested by, among other things, the distribution of virulent handbills and the burning of at least one bonfire upon the lawn of his house. Given this general background, Immigration Judge Lyons barred the public from the hearings, which are being held on the 13th floor of 26 Federal Plaza, a federal office building in New York City. Judge Lyons specifically exempted the press from his ban, with the expectation that they would report the proceedings to the public. It appears, however, that the press has not been in constant attendance. The deportation hearings are in recess pending my determination of this motion for a preliminary injunction, and thereafter are expected to continue for a number of days.

■ The several parties before the court take the following positions on the merits. The plaintiffs seek to have the hearings opened to the public; the United States Attorney's office, representing the INS, takes the position that the plaintiffs are entitled to attend and does not support the immigration judge's exclusionary ruling;

the attorney for respondent Maikovskis, appearing at this court's invitation as *amicus curiae,* argues essentially in support of the order of exclusion; and Immigration Judge Lyons, who appeared before me in person briefly at the commencement of the argument, urges only that, notwithstanding the government's refusal to support his position, this Court has an independent duty to examine the facts and the law and to reach its own conclusions. Judge Lyons' position is in accord with appropriate precedent, *see Sibron v. New York,* 392 U.S. 40, 58, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968); *Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 86 L.Ed. 832 (1942), and I follow that course, making an independent determination herein.

■ Before reaching the merits, however, two threshold questions must be answered. The first is whether the plaintiffs, as members of the general public, have standing to raise the issue in this court. The plaintiffs assert a cause of action under 8 C.F.R. § 246.16(a),[1] which provides:

Deportation hearings shall be open to the public, except that the special inquiry officer may, in his discretion and for the purpose of protecting witnesses, respondents, or the public interest, direct that the general public or particular individuals shall be excluded from the hearing in any specific case. Depending upon physical facilities, reasonable limitation may be placed upon the number in attendance at any one time, with priority being given to the press over the general public.

This regulation is but one of countless manifestations of a public policy centuries old[2] that judicial proceedings, especially those in which the life or liberty of an individual is at stake, should be subject to public scrutiny, not only for the protection of the individual from unwarranted and

---

1. Clearly, the court has jurisdiction over this claim. 28 U.S.C. § 1331(a).

2. In 1641, the General Court of Massachusetts Bay Colony enacted "The Massachusetts Body of Liberties," including the following passage:

Every man whether Inhabitant or forreiner, free or not free shall have libertie to come to

any publique Court, Councell, or Towne meeting.

*United Press Associations v. Valente,* 308 N.Y. 71, 89–90, 123 N.E.2d 777, 786 (1954) (Froessel, J., dissenting). *See generally id.,* 308 N.Y. at 89–94, 123 N.E.2d at 786–88.

àrbitrary conviction, but also to protect the public from lax prosecution. Unless members of the general public have standing to assert their rights under this regulation, its purpose could conceivably be defeated by a secret collusive hearing or arbitrary prosecution.[3] I note that the office of the general counsel of INS has acknowledged in this proceeding that "the regulation . . . in question in this case does confer an interest upon the public on which to base standing in this action." An agency's interpretation of its own regulation, though not conclusive, is certainly entitled to great weight. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

In any event, this INS interpretation is fully in accord with a considerable body of judicial comment on similar provisions in other areas of law. Even the sixth amendment to the United States Constitution, although clearly designed primarily for the benefit of the defendant, has been construed to have a broader purpose as well. As was stated in *Lewis v. Peyton,* 352 F.2d 791, 792 (4th Cir. 1965):

> The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant.

In *United States v. Kobli,* 172 F.2d 919, 924 (3d Cir. 1949), the court stated:

> [T]he right . . . accorded to members of the public to be present at a criminal trial as mere spectators . . . has been imbedded in our Constitution as an important safeguard not only to the accused but to the public generally.

*See also United States v. Lopez,* 328 F.Supp. 1077, 1087 (E.D.N.Y.1971), where the court stated:

The public has an independent right to be present to see that justice is fairly done. It is important that our citizens be free to observe court proceedings to insure a sense of confidence in the judicial process. Conducting trials behind closed doors might engender an apprehension and distrust of the legal system which would, in the end, destroy its ability to peacefully settle disputes.

*See generally In Re Oliver,* 333 U.S. 257, 266–73, 68 S.Ct. 499, 92 L.Ed. 682 (1948).[4]

In a New York State statutory context, it has been observed:

> A citizen who is refused admission to a courtroom is denied the exact same kind of right as one turned away from a public park or schoolroom.

*United Press Associations v. Valente, supra* note 2, 308 N.Y. at 86, 123 N.E.2d at 784 (Desmond, J., concurring). While in *Valente,* on the basis of specific legislative history, an equally divided court affirmed a lower court finding that the statute in question did not confer standing upon nonparties to enforce their right to attend a trial, this holding is clearly questioned, if not in fact essentially overruled, by later New York cases in which standing was found to exist. *See Oliver v. Postel,* 30 N.Y.2d 171, 179, 331 N.Y.S.2d 407, 412, 282 N.E.2d 306 (1972); *Gannett Co., Inc. v. Mark,* 54 A.D.2d 818, 387 N.Y.S.2d 336, 338 (4th Dept. 1976).

In this case, Judge Lyons has taken the position that the public's right to know is adequately protected if the press is free to enter. However, in the ordinary case, just as the general public should not be required to rely upon the representations of the government that a trial was fully and fairly prosecuted, so, too, it should not have to rely upon the representations of the press. The public should be able to see for itself

---

**3.** There is, in this case, not the slightest suggestion of any such misconduct.

**4.** Although it is not necessary in this proceeding to determine the public's rights under the sixth amendment, it is important to note that "although a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial . . . ." *Singer v. United States,* 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965).

that justice is being done. See, *e. g., United States v. Kobli, supra*, 172 F.2d at 923.[5]

Given the foregoing, I conclude that the plaintiffs here have standing to assert a claim for relief under 8 C.F.R. § 242.16(a).[6]

■ Next, it is necessary to briefly consider whether the plaintiffs may have an administrative remedy that should be pursued before resorting to the district court. Upon scrutiny, it appears that they do not. They cannot intervene in the deportation proceeding, since they assert no interest in its outcome—their interest is solely in monitoring the process by which the outcome is determined. Indeed the hearing structure of INS is designed only to deal with questions that arise in the context of regular administrative proceedings. Its regulations provide no mechanism whatsoever for dealing with claims of strangers to a proceeding. Moreover, there appears to be no procedure for interlocutory appeals within the agency for the regulations provide for appeals from "decisions," not from interlocutory orders, of the hearing officer. *See* 8 C.F.R. §§ 3.1(b), 242.21. Obviously, by the time agency review of the order closing the hearing could be obtained, the issue would be moot. *See Oliver v. Postel, supra*, 30 N.Y.2d at 183, 331 N.Y.S.2d at 415–16, 282 N.E.2d 306. Thus, the plaintiffs having no administrative remedy, it is entirely proper for them to address their claim to this court. *Cf. Lennon v. United States*, 387 F.Supp. 561 (S.D.N.Y.1975).[7]

■ Turning to the merits, the question before me is not what this court would have done under the circumstances, but whether Judge Lyons abused *his* discretion in closing the deportation hearing to members of the general public. *Federal Communications Commission v. Schreiber*, 381 U.S. 279, 291, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). As the earlier discussion on standing herein makes clear, not only does 8 C.F.R. § 242.16(a) provide for public hearings, but there is a general policy favoring disclosure of administrative agency proceedings. *FCC v. Schreiber, supra*, 381 U.S. at 293, 85 S.Ct. 1459. Further, when performing quasi-judicial functions, agencies "must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *Morgan v. United States*, 304 U.S. 1, 22, 58 S.Ct. 773, 778, 82 L.Ed. 1129 (1938). That "an 'open or public hearing' [is] a fundamental principle of fair play inherent in our judicial process cannot be seriously challenged." *Fitzgerald v. Hampton, supra* note 6, 152 U.S.App.D.C. at 10, 467 F.2d at 764. The exclusion of members of the public in derogation of these general principles occurs in essentially three situations: (1) for the protection of a class of spectators, such as the young, to safeguard their morals; (2) to protect the confidentiality of information or its source; and (3)—the situation here—for the benefit of a witness or party. *United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272, 1274 (2d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975).

When excluding members of the public for any of these reasons, it is well established that a judge may take only the most limited action necessary to sufficiently protect the interest perceived to be paramount to the interest of the public in an open

---

5. Indeed, here the public cannot wholly depend upon the press for there have been times when not a single member of the press has been in attendance.

6. I note that the instant plaintiffs allege a variety of special interests in attending these proceedings. Such special interests are not required for standing, since the regulation applies with equal force to *all* members of the general public. To meet "[t]he requirement that a party seeking review must allege facts showing that he is himself adversely affected," *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct.

1361, 1368, 31 L.Ed.2d 636 (1972), it is sufficient to assert, as these plaintiffs do, a personal desire to attend the hearing. The test for standing is not how strongly the plaintiff cares about the agency's action, but simply whether the plaintiff is among those personally affected by it.

7. It should be noted that even if a procedure existed for prompt administrative determination of plaintiffs' claim, this might be the kind of case in which that procedure could properly be bypassed. *See Fitzgerald v. Hampton*, 152 U.S.App.D.C. 1, 14, 467 F.2d 755, 768 (1972).

hearing. *See, e. g., Stamicarbon, N.V. v. American Cyanamid Co.,* 506 F.2d 532, 540–41, 542 (2d Cir. 1974); *United States ex rel. Lloyd v. Vincent, supra,* 520 F.2d at 1274.

In *United States ex rel. Smallwood v. LaValle,* 377 F.Supp. 1148 (E.D.N.Y.), *aff'd mem.,* 508 F.2d 837 (2d Cir. 1974), *cert. denied,* 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975), the District Court discussed general guiding principles:

> An order of exclusion should not "extend further than the special causes warrant in the particular instance." Any exclusion order must be governed by the surrounding circumstances and evidence of what is reasonable, keeping in mind that the discretionary power to close the courtroom should be "sparingly exercised" by the trial judge, "and then, only when unusual circumstances necessitate it." People v. Hinton . . ., 31 N.Y.2d [71] at 76, 334 N.Y.S.2d [885], at 889, 286 N.E.2d [265], at 267.

*Id.* at 1152 (footnotes omitted).

■ Here, although Judge Lyons has before him a respondent of some notoriety, whose life or person may indeed be in some danger, I cannot but conclude that it is possible to assure appropriate security within the courtroom itself—that is, orderly spectators without weapons—thereby protecting the respondent without sacrificing the openness that is so fundamental to our system.[8]

Here, respondent Maikovskis' picture and his address, as well as the existence and location of his deportation hearing, have been widely publicized. Any member of the general public may await the respondent in the lobby of 26 Federal Plaza, rub shoulders with him going up in the elevator, and walk with him to the door of the hearing room, but may not go the last few feet to take a seat inside and observe the proceedings. The only possible purpose in closing the hearing, therefore, is to protect him from harm *within* the courtroom. Given the fact that INS has assured this court that it can employ the same protective measures to guard the deportation hearing room as are used in federal courts in cases where there is reason to anticipate violence in the courtroom, there is no rational basis for concluding that closing the hearing room to the public will offer significant additional protection to the respondent. It necessarily follows that Judge Lyons, in barring the public from the courtroom under these circumstances, abused his discretion.

The preliminary injunction sought by the plaintiffs herein, opening the Maikovskis hearings to the public, is therefore granted.[9]

So Ordered.

---

8. Security devices at the doorways of courtrooms are now in regular use in the district courts, which maintain open courtrooms in virtually every type of proceeding. As Judge Lumbard, concurring in *United States ex rel. Lloyd v. Vincent, supra,* 520 F.2d at 1275, pointed out, "[i]n no area of law enforcement have murder, mayhem and terror been more frequently used against disclosure and testimony [than in narcotics cases]." Yet, even in those cases, witnesses generally testify in open court except when the witness is an undercover agent whose confidentiality must be maintained, and even then, "the better course would [be] for the trial judge to hold an evidentiary hearing" before determining that the courtroom must be closed during that particular testimony. *Id.* (majority opinion).

9. Nothing in this opinion is intended to limit Judge Lyons in the exercise of his discretion in any situation that may arise in the future.