In the Matter of GANNETT Co., INC., Petitioner, v DANIEL A. DePASQUALE, as Judge of the Seneca County Court, et al., Respondents.

Fourth Department, December 17, 1976

*Nixon, Hargrave, Devans & Doyle (Robert Bernius* of counsel), for petitioner.

*John M. Sipos (Alan Marrus* of counsel), for Daniel A. DePasquale, respondent.

*Thomas L. Jones (Alan Marrus* of counsel), for Kyle E. Greathouse, respondent.

*Stuart O. Miller (Alan Marrus* of counsel), for David R. Jones, respondent.

*Walter J. Ward, District Attorney, (Alan Marrus* of counsel), respondent *pro se.*

*Per Curiam.* Petitioner Gannett Co., Inc. seeks an order of prohibition pursuant to CPLR article 78 vacating and prohibiting enforcement of two orders of the Seneca County Court which excluded the public and press from a pretrial *Huntley*

hearing in a criminal prosecution involving two defendants charged with murder.

Petitioner owns and operates two daily newspapers and one television station in the Rochester area. In the course of its news reporting activities petitioner assigns reporters to cover criminal proceedings that are expected to generate interest among the general public. People v Kyle Edwin Greathouse and Davis Ray Jones is one such proceeding currently in the pretrial stage in Seneca County. Defendants Greathouse and Jones were indicted for the crimes of murder, robbery and larceny. It was alleged in the indictment that Greathouse and Jones robbed and murdered a fishing companion and dumped the victim's body into Seneca Lake. Thereafter the defendants fled the jurisdiction and were eventually arrested in Michigan. Subsequently they were returned to New York to face criminal charges. The case against the defendants is somewhat unique in that the alleged victim's body had not been recovered when the indictments were returned, and the record indicates that the corpus of the alleged victim is still missing. Another unusual circumstance is that one of the defendants is 16 years old.

The defendants subsequently filed a motion pursuant to CPL article 710 to suppress certain statements attributed to them. The *Huntley* hearing was conducted before Honorable DANIEL A. DEPASQUALE, Seneca County Court Judge, who ordered that the hearing be closed to the public and press upon the request of the defendants. In the first order the court gave as its reasons for closure that the *Huntley* hearing "is not the trial of the matter. Certain evidentiary matters may come up in the testimony of the People's witnesses that may be prejudicial to the defendant, and for those reasons the Court is going to grant both motions". During the hearing petitioner sought a postponement to argue its right to be present and to have access to transcripts of the completed portion of the hearing. Petitioner's request was denied and the hearing remained closed. Thereafter petitioner moved to vacate the closure order *nunc pro tunc* and for immediate access to the completed stenographic transcripts of the suppression hearing. The County Court once again denied the relief requested "on the theory that under the special and unusual circumstances—one of these two defendants being 16 years of age—that there was a reasonable probability of prejudice to the defendants, and the Court therefore found it necessary to

grant the motion". Petitioner is now seeking to vacate and prohibit enforcement of both the oral order of closure and the subsequent written order which denied petitioner's motion to vacate the closure order *nunc pro tunc* and for immediate access to the transcripts of the hearing.

This proceeding presents a basic conflict between petitioner's First and Sixth Amendment right to attend criminal proceedings and publish information with regard thereto and the constitutional right of the defendants to receive a fair trial before an impartial jury. The issue is whether the public and representatives of the news media may be excluded from a pretrial suppression hearing concerning the voluntariness of alleged confessions and admissions on the ground that an open hearing would create a reasonable probability of prejudice to the defendants.

The accused in a criminal prosecution has a constitutional right to a public trial (US Const, 6th Amdt; *Duncan v Louisiana,* 391 US 145; see, also, *Matter of Oliver v Postel,* 30 NY2d 171; Judiciary Law, § 4; Civil Rights Law, § 12). But the public trial guarantee does not inure to the benefit of the accused alone. The public has a vital interest in open judicial proceedings, especially criminal proceedings, to insure that the integrity of the judicial process remains intact. Public trials "serve to instill a sense of public trust in our judicial process by preventing the abuses of secret tribunals as exemplified by the Inquisition, Star Chamber and *lettre de cachet" (People v Hinton,* 31 NY2d 71, 73; *United States ex rel. Lloyd v Vincent,* 520 F2d 1272, cert den 423 US 937). "The searchlight of a trial which is open to the public serves as a restraint against the abuse of judicial power" *(United States ex rel. Bennett v Rundle,* 419 F2d 599, 606; *Matter of Oliver,* 333 US 257, 270; *People v Jelke,* 308 NY 56, 62). "A trial is a public event. What transpires in the courtroom is public property" *(Craig v Harney,* 331 US 367, 374).

Precisely because "the public at large has a vital stake in the concept of a public trial" *(People v Hinton, supra,* p 73), the circumstances under which a trial court may order closure have been closely circumscribed. Closure is permitted only in "unusual circumstances" *(People v Hinton, supra)* or upon a clear showing that such an order is required to prevent "a serious and imminent threat to the integrity of the trial" *(Matter of Oliver v Postel, supra,* citing *Craig v Harney,* 331 US 367, 373, 377, *supra;* see *Matter of Hearst Corp. v Cho-*

*lakis,* 54 AD2d 592). A closed trial order "constitutes an exception to the general rule requiring open judicial proceedings * * * and may only be employed as a response to compelling factual circumstances. The discretionary judgment which bars the doorway to a courtroom must be 'sparingly exercised and then, only when unusual circumstances necessitate it' *(People v Hinton,* 31 NY2d 71, *supra* * * * *People v Devine,* 80 Misc 2d 641)" *(Matter of Gannett Co. v Mark,* 54 AD2d 818, 819). An exclusionary order must be supported by a factual showing of prejudice to the defendant *(Matter of Hansen v Kelly,* 38 AD2d 722). Where no showing of prejudice has been made, an order closing the courtroom is inappropriate and must be vacated *(Matter of Hearst Corp. v Cholakis, supra).* The guiding principle is that a court is a public facility from which the public and press cannot be excluded except when there is a showing of a compelling reason for such action *(Matter of Gannett Co. v Mark, supra).*

The exclusionary order entered by the County Court is not supported by a showing of compelling factual circumstances. Respondent DePasquale indicated that the reason for closure was the reasonable probability of prejudice to the defendants. The only factual reason given is that one of the defendants is 16 years of age. There is no further reason given. No finding was made concerning the extent of pretrial coverage in the case, the impact which the disclosures would be expected to produce, the size of the prospective jury pool in Seneca County nor as to any other matter that would indicate with a reasonable amount of certainty that the defendants could not receive a fair trial in Seneca County without a closed *Huntley* hearing. The closure order entered here lacks the requisite factual basis necessary to overcome the right of the public and press to open judicial proceedings.

There is a second infirmity in the County Court order which overshadows the right of the public to open judicial proceedings. The exclusionary order entered here infringed petitioner's First Amendment rights in that it constituted a violation of the right of the press to publish free from unlawful governmental interference. It is clear that a closed trial order restricts media access to information ordinarily made available to the general public. By denying access to the media a Trial Judge can effectively prevent the publication of testimony or other information deemed prejudicial to the accused. It is this feature of the instant closed trial order that is

attacked by petitioner as an infringement upon its First Amendment rights. Logic compels the conclusion that where an exclusionary order is entered merely as a substitute for a "gag order" which would otherwise place a direct restraint on what the press can publish, such exclusionary order infringes upon protected First Amendment rights. An exclusionary order is merely a substitute for a direct prior restraint where, as here, the sole purpose behind the order is to *prevent the publication* of what transpires in the courtroom during a pretrial hearing.

The fact that such an order "constituted a novel form of censorship cannot insulate or shield it from constitutional attack" *(Matter of Oliver v Postel,* 30 NY2d 171, 183, *supra).* "In the area of 'indispensable' First Amendment liberties, the Supreme Court has been careful 'not to limit [their] protection * * * to any particular way of abridging it' *(Grosjean v. American Press Co.,* 297 U.S. 223, 249; see, also, Communications Assn. v. Douds, 339 U.S. 382, 402; *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 461), since 'abridgment of such rights, even though unintended, may inevitably follow from varied forms of governmental action.' *(N.A.A.C.P. v. Alabama,* 357 U.S. 449, 461, *supra.)".* Where an exclusionary order is directed at the press to prevent the publication of material prejudicial to the defendant, First Amendment rights are abridged to the same degree as in the case of a "gag order" directing the press not to publish the asserted prejudicial information.

The County Court excluded the public and press from the *Huntley* hearing due to the reasonable probability of prejudice to the defendants inherent in conducting an open proceeding. The prejudice to which the County Court was referring was the possibility that massive pretrial publication of the defendants' confessions and incriminating statements would infect prospective jurors with such prejudice against the defendants, conscious or unconscious, that they could not receive a fair trial in Seneca County. (See *People v Pratt,* 27 AD2d 199.) While this possibility certainly exists, the purpose behind the exclusionary order unmasks it as a substitute for a gag order that would otherwise place a direct restraint on the right of the press to publish.

Prior restraint on speech and publication is "the most serious and least tolerable infringement on First Amendment rights" *(Nebraska Press Assn. v Stuart,* 427 US 539, 559).

"[O]nly the most exigent circumstances warrant the issuance of an order curtailing the right of the press to publish. All other measures within the power of the court to insure a fair trial must be found to be unavailing or deficient" *(Matter of New York Times Co. v Starkey,* 51 AD2d 60, 64). The reviewing court must examine the evidence before the Trial Judge when the order was entered to determine (a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; (c) how effectively a restraining order would operate to prevent the threatened danger. The reviewing court should then consider whether the record supports the entry of a prior restraint on publication *(Nebraska Press Assn. v Stuart, supra,* p 562).

Applying these standards to the order under review we find that the "heavy burden imposed as a condition to securing a prior restraint" has not been met here *(Nebraska Press Assn. v Stuart, supra,* p 570). Respondent made no findings with regard to the nature and extent of pretrial news coverage. Nor did Judge DePasquale inquire into whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity. And no determination was made as to how effectively the exclusionary order would operate to prevent the threatened danger *(Nebraska Press Assn. v Stuart, supra,* pp 562-567). The record in the instant case clearly does not support the entry of respondent's restrictive order barring the public and press from the defendants' *Huntley* hearing. The reasons set forth by the County Court cannot justify the violation of First Amendment rights evident here.

Petitioner has also asserted a due process right to notice and a hearing prior to the entry of exclusionary orders which are directed at the press to prevent the publication of matters prejudicial to the defendant in a criminal proceeding. Such rights have been accorded to the press in cases involving direct prior restraints *(Matter of New York Times Co. v Starkey, supra; United States v Schiavo,* 504 F2d 1), and similar rights should be accorded to the press where a trial court contemplates entering an exclusionary order for the purpose of suppressing pretrial publicity deemed prejudicial to the defendant.

The record shows that the closure order under review was entered specifically to prevent petitioner from disseminating the inherently prejudicial disclosures that inevitably follow

from a *Huntley* hearing. Respondent DePasquale was undoubtedly motivated by a concern that the defendants receive a fair trial in Seneca County, yet the purpose behind the closure order was unquestionably to prevent such information from reaching the eyes and ears of prospective jurors. In this respect the order constituted a prior restraint on petitioner's freedom to publish what transpired during the *Huntley* hearing. For this very reason respondent's order violated petitioner's First Amendment rights (see *State ex rel. Dayton Newspapers v Phillips,* 46 Ohio St 2d 457). Judged by the standards enunciated in *Matter of Nebraska Press Assn. Co. v Stuart (supra),* the closure order entered here cannot withstand petitioner's constitutional challenge.

For the reasons stated, the orders of the County Court should be vacated and the petitioner should be granted immediate access to the stenographic transcript of the pretrial *Huntley* hearing.

MOULE, J. P., SIMONS, DILLON and GOLDMAN, JJ., concur.

Application unanimously granted without costs. Orders vacated and matter remitted to Seneca County Court in accordance with *Per Curiam* opinion.