The Court adopts the foregoing as its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## JUDGMENT

This matter is before the Court after a hearing on the merits of plaintiff's complaint in which she seeks to enjoin defendant from actions to collect taxes allegedly due.

After consideration of the matter, and in accordance with the Memorandum filed this day and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff shall have judgment against defendant on her complaint, at defendant's costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, his agents and employees, be and are PERMANENTLY ENJOINED from selling plaintiff's property at 13737 Tesson Ferry Road, St. Louis County, Missouri on account of tax deficiencies assessed for the tax years 1972 and 1973; and

IT IS FURTHER ORDERED that defendant, his agents and employees, shall abate the deficiency assessments against plaintiff for the years 1972 and 1973 and release the tax liens filed against plaintiff in the Office of the Recorder of Deeds, St. Louis County, Missouri, for the additional taxes assessed for 1972 and 1973.

UNITED STATES of America, Plaintiff,

v.

Nicholas CIVELLA, Peter Tamburello, John Tortora, Defendants.

No. 80–00023–01/03–CR–W–5.

United States District Court, W. D. Missouri, W. D.

May 14, 1980.

David B. B. Helfrey, Sp. U. S. Atty., Kansas City, Mo., for plaintiff.

Oscar B. Goodman, Las Vegas, Nev., Byron Neal Fox, Kansas City, Mo., for defendant Civella.

Robert Beaird, Kansas City, Mo., for defendant Tamburello.

Richard Knight, Nation & Curley, Kansas City, Mo., for defendant Tortora.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

This case comes before the Court on defendants' motions to close pre-trial hearings to the news media and to seal pre-trial motions filed in this case. In support of these extraordinary motions, the defendants allege that they have been subjected to "unprecedented publicity;" that further publicity will impair their ability to obtain a fair trial; that several of the pre-trial motions filed on their behalf will necessitate the holding of pre-trial hearings; that the defendants anticipate widespread coverage of both the motions and the hearings by the news media; that media coverage of the pre-trial matters in this case will further "compound an already critical publicity situation;" and that media access to the hearings will nullify the effectiveness of a protective order previously entered by this Court. Based on the foregoing allegations, defendants forcefully argue that the closure of pre-trial hearings and the sealing of pre-trial motions is clearly justified under the United States Supreme Court's recent decision in *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

Defendants' motions are opposed by counsel for the government and counsel for the Kansas City Star Co., the publisher of the two major newspapers in Kansas City. Both argue not only that *Gannett* is wholly distinguishable from the present case, but also that *Gannett* represents a very narrow holding limited strictly to its facts. They further contend that defendants' request to close all pre-trial hearings is overly broad and far exceeds anything contemplated by the *Gannett* court.

A hearing on defendants' motions was held on May 2, 1980, and defendants were given an opportunity to substantiate their claim of prejudicial pre-trial publicity. At the urging of defense counsel, counsel for the Kansas City Star Co. revealed that since January 1, 1970, the *Kansas City Times* and the *Kansas City Star* have published over 150 articles in which there was some reference to the defendant Nicholas Civella. It was further disclosed that nearly 120 articles mentioning Civella were published by these two newspapers prior to 1970. The papers also have published a total of nineteen articles in which the defendant Peter Tamburello was mentioned. There was no evidence introduced as to the number of articles published in which the defendant John Tortora was mentioned.*

---

* A comparison of the number of articles printed, and the time span over which they were published, shows that these defendants, or at least the defendant Civella, have received substan-

In addition to the above information, defense counsel introduced in evidence a document styled the "ABC Audit Report-Newspaper." This report sets forth the total average paid circulation of the *Kansas City Times* and the *Kansas City Star* for the twelve-month period ending on March 31, 1979. The report also details the combined circulation of the newspapers on a county-by-county basis. Defense counsel indicated that this information was introduced to show the extent to which articles published in the Kansas City newspapers are disseminated within the Western District of Missouri.

Admittedly, the defendants in this case have been subjected to a considerable amount of pre-trial publicity and, according to counsel for the Kansas City Star Co., unless the press is excluded from future court proceedings, it can be reasonably anticipated that the defendants will receive additional publicity. But despite the extensive publicity the defendants have received, the Court does not believe that either the closure of pre-trial hearings or the sealing of pre-trial motions from public scrutiny is justified under the present circumstances. The Court reaches this conclusion primarily on the basis of the Eighth Circuit's recent opinion in *United States v. Powers*, 622 F.2d 317 (8th Cir. 1980).

In *Powers* the defendant filed a motion to exclude the public from his criminal trial. The defendant alleged, and subsequent *in camera* testimony established, that he had formerly been a police informant and that, as part of his defense in this case, he wished to testify about some of his informant activities. He claimed, however, that unless the court closed his trial to the public, he could not testify about his informant activities for fear of reprisals against him or his family. Thus, he essentially argued that unless the public was excluded from his

trial so he could adequately present his defense, he would be deprived of the right to a fair trial guaranteed him by the Fifth and Sixth amendments to the United States Constitution. The district court nonetheless denied Powers' motion and, on appeal, the Eighth Circuit affirmed.

In affirming the lower court, the Eighth Circuit observed that the issue raised by *Powers* had not been precisely ruled on by the Supreme Court in *Gannett*. The question presented in *Gannett* was "whether members of the public have an independent constitutional right to insist upon access to a pretrial judicial proceeding, even though the accused, the prosecutor and the trial judge all have agreed to the closure of that proceeding in order to assure a fair trial." *Gannett Co., Inc. v. DePasquale*, 99 S.Ct. at 2901. The majority in *Gannett* concluded that no such constitutional right existed. The issue in *Powers*, however, was whether the defendant was denied his due process right to a fair trial when the district court refused to allow him to waive his Sixth amendment right to a public trial and compel closure. *United States v. Powers*, 622 F.2d at 321–322. In this context, the court held that in order to establish a deprivation of his due process right to a fair trial, a "defendant must . . . 'demonstrate a strict and inescapable necessity for closure.'" *Id.* at 324, quoting from *Gannett Co., Inc. v. DePasquale*, 99 S.Ct. at 2938 (Blackmun, J., dissenting).

In so holding, the Eight Circuit emphasized the strong and substantial interest society has in open, public trials. Trials in this country traditionally have been public and, under the Sixth amendment, open trials are presumed to be the norm. Hence, a defendant who seeks to compel a closed judicial proceeding without the consent of the prosecutor bears a heavy burden and "[o]nly in the most exceptional circumstanc-

---

tially more pre-trial publicity than the defendants in the *Gannett* case. The defendants in *Gannett* were charged with the murder of Wayne Clapp. Fourteen stories concerning the Clapp murder appeared in the local morning and evening newspapers between July 20,

when the first story appeared, and August 6. However, no articles were published about the case between August 6 and November 4, the day of the closed suppression hearing. *Gannett Co., Inc. v. DePasquale*, 99 S.Ct. at 2919–20 (Blackmun, J., dissenting).

es should closure even be considered, and in fewer instances compelled. A criminal defendant is guaranteed a public trial, but there is no constitutional guarantee of a closed trial at the defendant's request." *United States v. Powers*, 622 F.2d 317 at 323.

■ In ruling on Powers' closure motion, the district court had essentially applied the three-pronged test set forth in Justice Blackmun's dissenting opinion in *Gannett.* The court of appeals approved of use of this test, stating that "[w]e believe that Justice Blackmun's three-prong test correctly states the standard to be applied in the limited case where the defendant seeks closure without the consent of the prosecutor." *Id.* at 323. Under this test, a defendant who seeks closure without the consent of the prosecutor must establish the following:

First, he should provide an adequate basis to support a finding that there is a substantial probability that irreparable damage to his fair trial right will result from conducting the proceeding in public.

\* \* \* \* \* \*

Second, the accused should show a substantial probability that alternatives to closure will not protect adequately his right to a fair trial.

\* \* \* \* \* \*

Third, the accused should demonstrate that there is a substantial probability that closure will be effective in protecting against the perceived harm.

*Id.* at 322, quoting from *Gannett Co., Inc. v. DePasquale*, 99 S.Ct. at 2937 (Blackmun, J., dissenting).

*Powers* and the present case are, of course, factually distinguishable. *Powers* did not contend, as the defendants here do, that his right to a fair trial was impaired because of extensive pre-trial publicity. Nevertheless, in view of the Eighth Circuit's admonition that closure should only be considered in the most exceptional circumstances, the Court is convinced that the test enunciated in the *Powers* decision is the appropriate standard for this case. And applying the *Powers* test to the facts of this case, the Court finds that the defendants have failed to carry their burden of establishing the necessity for closed pre-trial hearings.

The Court is not persuaded that the defendants have shown that "there is a substantial probability that irreparable damage to [their] fair trial right will result from conducting the proceedings in public." Although defendants contend that public pre-trial hearings will work to their prejudice, and make it extremely difficult to obtain a fair trial, the potential prejudicial impact of the pre-trial hearings is highly speculative. Until a jury panel is actually subjected to a probing voir dire examination, there is no way of determining what effect, if any, pre-trial publicity has had on this case. Furthermore, even assuming that the defendants have shown that there is a substantial probability that open pre-trial hearings will impair their right to a fair trial, the defendants clearly have failed to satisfy the second part of the *Powers* test. There has been nothing presented to the Court which leads it to believe that alternatives to closure will not adequately protect their right to a fair trial.

Even though the Court concludes that the defendants have failed to establish sufficient grounds to justify the closure of the pre-trial hearings in this case, it must be conceded that the pre-trial publicity accorded these defendants by the two major Kansas City newspapers has been substantial. Consequently, in order to alleviate any doubts the defendants may have about their ability to procure a jury untainted by pre-trial publicity, the Court has decided, after giving due consideration to the convenience of the defendants and the witnesses, to designate Springfield, Missouri, as the place where this case will be tried.

The defendants have not claimed that news media sources outside the immediate Kansas City vicinity have given them extensive pre-trial publicity. In fact, at the closure hearing the only evidence introduced related to the coverage of the defendants by the newspapers owned by the

Kansas City Star Co. Nothing was adduced at the hearing to indicate the extent of coverage, if any, given the defendants by the electronic media in the Kansas City area, nor was any evidence offered as to the scope of pre-trial publicity in other cities and towns within this judicial district. Therefore, based on the record established by the defendants, the Court can assume, and it believes this assumption is entirely warranted, that the defendants have not received widespread pre-trial publicity outside the Kansas City metropolitan area. The audit report submitted by the Kansas City Star Co. indicates that its newspapers are not widely circulated in the out-state counties, and, in Greene County, where Springfield is located, the report reveals that the two Kansas City newspapers have a combined daily circulation of less than 200 and a Sunday circulation of less than 700. Thus, since there is no evidence before the Court indicating that the defendants have received other than minimal pre-trial publicity outside of Kansas City, the Court believes that the defendants will encounter no problems empaneling an impartial and unbiased jury in Springfield, Missouri.

Moreover, the Court finds that the transfer of this case to another city for trial is strongly supported, if not mandated, by decisions of the United States Supreme Court. In *Gannett, supra,* 99 S.Ct. at 2904, the Court stated that in order "[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. . . . And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." Similarly, in *Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 the Court stated:

Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused . . . Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.

■ The Court additionally notes that Springfield is located in the Southern Division of this Court and, by statute, has been designated as the place where Court for the Southern Division shall be held. 28 U.S.C. § 105 (1976). And, because the Southern Division is merely one of several divisions of this judicial district, it is not necessary to obtain the defendants' consent before transferring this case to Springfield for purposes of trial. *United States v. Lewis,* 504 F.2d 92, 98 (6th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975). The defendants have no constitutional right to be tried in any particular division of a district, *United States v. Thiel,* 619 F.2d 778 (8th Cir. 1980); *Zicarelli v. Gray,* 543 F.2d 466, 479 (3d Cir. 1976), and "Fed.R.Crim.P. 18 vests discretion in the district court to determine the place of trial ' * * * with due regard to the convenience of the defendant and the witnesses.'" *United States v. Brown,* 535 F.2d 424, 429 (8th Cir. 1976).

There is also ample precedent for a *sua sponte* transfer by the trial court from one division to another. For example, in *United States v. Mase,* 556 F.2d 671 (2d Cir. 1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1472, 55 L.Ed.2d 508 (1978), the defendant's first trial ended in a mistrial when the trial judge learned that a number of jurors had read certain newspaper articles linking the defendant to organized crime. The district court subsequently denied defendant's motion to exclude the press from his second trial and, instead, transferred the case to another city for the second trial. On appeal, the Second Circuit upheld the district court's action, stating that "[w]e think that transferring the second trial to Hartford was an appropriate way to accommodate

the public's right to a speedy and public trial with the defendant's right to a fair trial." *Id.* at 676. *See also United States v. James,* 528 F.2d 999, 1021 (5th Cir.), *cert. denied,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976), where the appellate court affirmed the district court's transfer of a criminal case from one division to another as an alternative to quashing an indictment because of excessive pre-trial publicity.

As in the *Mase* case, *supra,* this Court finds that transferring the trial of this case to Springfield will accommodate competing interests: the public's strong interest in open judicial proceedings and the defendants' right to be tried by a jury unbiased by pre-trial publicity. Accordingly, for the reasons stated herein, it is hereby

ORDERED that the defendants' motions to close the pre-trial hearings to the news media and to seal pre-trial motions be, and the same are hereby denied. It is further

ORDERED that trial of this case be, and is hereby, scheduled to commence on June 9, 1980 at 9:30 a. m. in the United States Courthouse in Springfield, Missouri.