UNITED STATES of America

v.

**Howard L. CRIDEN, Harry P. Jannotti, Louis C. Johanson, George X. Schwartz.**

**Appeal of PHILADELPHIA NEWSPAPERS, INC.**

**Nos. 80–2309, 80–2482.**

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 1981.

Decided March 26, 1982.

---

Samuel E. Klein (argued), Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for appellant.

Curtis R. Reitz, Philadelphia, Pa. (argued), Judith N. Renzulli, Wilson & Whittington, Wilmington, Del., for amici curiae.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Philadelphia Newspapers, Inc. (PN) appeals from the district court's denial of its motion for immediate access to the transcript of a pretrial hearing held in camera. PN also appeals from the granting of defendant Howard Criden's motion to conduct a pretrial hearing in camera. This court has jurisdiction over the appeals under 28 U.S.C. § 1291 (1976). *See United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir. 1978), *implicitly overruled on other grounds in Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

### I. *Facts*

#### A. *Transcript of the July 18 Hearing*

This case arises from the Government's joint prosecution of four "Abscam" defendants, three of whom filed motions to suppress statements they gave to FBI agents. Accompanying Criden's motion was a letter requesting that the district court seal and impound his motion and that the court consider the motion entirely in camera. Criden stated in another letter that the Government did not object to closure. The Government proposed that the document be sealed pursuant to local court rule 4(c), which appears to be limited to protection of the confidentiality of grand jury proceedings.[1] The letters, Criden's motion to suppress statements, and the Government's responses to defendants' motions to suppress were not noted on the docket until August 1981.

On July 18, 1980, a reporter for *The Philadelphia Inquirer* observed witnesses entering judicial chambers. The reporter made inquiry and was informed that testimony was being taken in camera. The closed evidentiary hearing was not announced in open court, and no prior notice was given to the public. The reporter requested access to the hearing, but was advised that the subject matter was confidential. On July 21, PN filed a motion to intervene in the pending cases and a motion for immediate access to the July 18 transcript. The court did not act on the first motion,[2] but denied the second. It filed two memoranda concurrently, one publicly and one under seal.[3]

In the public memorandum, the court did not disclose the nature either of the proceedings or of the motions to which the hearings were addressed, finding that the subject of the hearings involved "matters, the pretrial disclosure of which would inevitably impair or destroy the rights of both the Government and the defendant to a fair trial before an impartial tribunal." PN appealed from the order denying access to the July 18 transcript.

#### B. *September Due Process Hearings*

The second hearing at issue involved the defendants' pretrial motions for dismissal of the indictments on the grounds of Government overreaching and entrapment. The district court severed the trials of Schwartz and Jannotti from those of Criden and Johanson, but did not act on the motions to dismiss until after the trial of Schwartz and Jannotti. Criden and Johanson have not

---

**1.** No issue of request for closure by the Government has been raised in this case. The district court apparently did not rely on the presence of grand jury secrets to support its refusal to release the transcript of the July 18 hearing. Therefore, the only issue in regard to the July 18 hearing that we must address is whether the district court properly refused to release the transcript of the hearing that it placed under seal. The correctness of this order depends upon the validity of the court's closure of the hearing in the first instance.

**2.** The district court later granted PN's request to intervene during discussion of the closure of

other hearings. PN took no appeal from the court's decision there to proceed in camera. Assuming that PN must move to intervene on each matter that it wishes to preserve for appeal, we believe that the district court's written orders appealed here, which specifically name PN as the movant or objector, implicitly grant PN intervenor status.

**3.** Pursuant to the direction of this court, certain impounded material was reviewed by PN's counsel and amici curiae for purposes of this appeal.

been tried in the United States District Court for the Eastern District of Pennsylvania, and indeed, the Government has moved to dismiss the indictments against them.

During the hearing on September 24 on the pretrial motions for dismissal of the indictments, defendants proposed to call as witnesses Criden and Angelo Errichetti, who faced an Abscam indictment in another federal district court. During a side-bar conference, counsel for Criden moved that testimony of his client be taken in camera. At the end of the conference, the court announced to those in the courtroom that "defendants who have not yet been tried or who await further trial are entitled to be heard in chambers regarding the substance of the case, and therefore this hearing will be closed to the public and the press."

After an hour recess, the court stated that it had received a request that the evidentiary hearing not be closed. The district court invited argument from any interested person. Counsel for Criden contended that the hearing was in the nature of a pretrial hearing and that the information to be brought out, if publicized, would impair Criden's right to a fair trial. The court ruled that counsel had made "a *prima facie* case for closing the hearing." Counsel for PN opposed closure, incorporating by reference argument made in support of PN's July 21 motion and asserting further that the matter was no longer just a pretrial proceeding.

The court ruled that any testimony of Criden, Errichetti, and Johanson would be taken in camera. The court noted that, as to Criden, Errichetti, and Johanson, the case was still in pretrial stages and that their testimony on the pending motions would not be admissible against them in their subsequent trials. The court filed a written order closing the proceeding.

PN appealed from this order.[4]

## II. *Jurisdiction*

PN appealed from two orders: one denying access to the transcript of the July 18 hearing and the other denying access to the September 24 hearing. Transcripts of both hearings are now available to the public,[5] and it is arguable that the cases are moot. Some cases, however, are reviewable as disputes that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The United States Supreme Court has stated that " 'in the absence of a class action, the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Murphy v. Hunt*, —— U.S. ——, ——, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)(per curiam) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam)).

■ We believe the two appeals before us are not moot under the standard stated

---

4. Defendants Criden, Jannotti, and Schwartz no longer oppose the release of the sealed materials to which PN seeks access. Defendant Johanson has not participated in this appeal, but his position with respect to the sealed materials is that they should remain sealed. Johanson stated by letter "that the reasons for sealing the materials in question, as set forth in [the district court's] Order of July 22, 1980, still apply." Johanson awaits trial following an indictment by a grand jury in the United States District Court for the Eastern District of Pennsylvania. The Government has moved to dismiss the indictment of Johanson, but to this court's knowledge, that motion has not been granted. Nevertheless, Johanson has not participated in this appeal. Because informed decisionmaking requires that the position adverse to that of PN be fully and forcefully advanced, this court appointed amici curiae to brief and to argue an appropriate response to PN's position.

5. Apparently without action by the district court, transcripts of the July 18 and of the September 24 hearings have been made public. Counsel for the Government, on appeal from the order granting Jannotti and Schwartz' due process motions to dismiss the indictments, *United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982) (in banc), included these transcripts in its appendix, which has been available to the public and to the press.

in *Murphy.* In *Gannett,* the Court stated: "The order closing a pretrial hearing is too short in its duration to permit full review. And to the extent the order has the effect of denying access to the transcript .... [t]he order is 'by nature short-lived.'" 443 U.S. at 377, 99 S.Ct. at 2904 (quoting *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 547, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976)). Further, it is reasonable to expect that PN, a major newspaper publisher in the Philadelphia area, will be subjected to similar closure orders entered by the district courts in this circuit. *See Gannett,* 443 U.S. at 377–78, 99 S.Ct. at 2904–05. We therefore turn to the merits.

## III. *Arguments*

PN contends that the public has a right of access to pretrial proceedings in criminal cases, guaranteed by the first amendment, which is enforceable absent clear and convincing evidence that shows to a substantial probability that: (a) irreparable damage to a fair trial will result from conducting public proceedings; (b) alternatives to closure will not protect adequately the right to a fair trial; and (c) closure will be effective in protecting against the perceived harm. PN also argues that the district court in this case erred because it closed the hearings: (a) without providing the public with notice and an opportunity to be heard on the issue of closure; (b) without taking evidence of the factors of likely prejudice and the efficacy of alternative means of preserving a fair trial; and (c) without articulating in writing the reasons justifying the closure. PN urges this court to reverse the orders of the district court and order the immediate release of the transcripts of all in camera hearings conducted to date.

Amici curiae argue that it was not an abuse of discretion for the district court to close the pretrial hearing because: (1) there was a reasonable likelihood that dissemination of information which might be disclosed in the closed hearing would impair the defendants' right to a fair trial; (2) reasonable alternatives to closure would not adequately protect that right; and (3) the limitations imposed extended no further than the circumstances required to protect that right. Amici curiae contend that the district court met appropriate procedural requirements for pretrial criminal hearings by: (1) assuring that a complete record was made of proceedings leading to a decision to conduct closed hearings; (2) articulating for the record the reasons for its decision to hold the hearings in camera; and (3) assuring that a complete record was made of evidentiary proceedings conducted outside the presence of the public.

## IV. *Discussion*

We hold that: (1) the public has a first amendment right of access to pretrial suppression, due process, and entrapment hearings; (2) that motions for closure of such hearings must be posted on the docket to give notice to the public; and (3) that a district court, before closing a pretrial hearing, must consider alternatives to closure and state on the record its reasons for rejecting them. We conclude that the district court in closing the July 18 hearing, and thus in denying PN access to a transcript of the hearing, failed to articulate its reasons for rejecting alternatives to closure and failed to give appropriate notice of the motion to close. We also conclude that the district court in closing the September 24 hearing failed to articulate its reasons for rejecting alternatives to closure. It is therefore unnecessary to decide whether, as PN argues, the district court committed other errors in closing the hearings.

### A. *First Amendment Right of Access*

In *Gannett,* the United States Supreme Court held that the public has no right under the sixth amendment to attend pretrial proceedings in a criminal action. In *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Court held that the public has a right under the first amendment to attend criminal trials. Neither case is controlling here. It is clear after *Gannett,* however, that PN had no sixth amendment right of access to the July 18 hearing. The Court in *Richmond Newspapers* did not decide whether there was a first amendment right

of access to any part of the criminal proceedings other than the trial. *See Richmond Newspapers*, 448 U.S. at 563–64, 100 S.Ct. at 2820–21 (plurality opinion); *id.* at 584–85, 598 n.25, 100 S.Ct. at 2831–32, 2839 n.25 (Brennan, J., concurring in the judgment); *id.* at 599, 100 S.Ct. at 2840 (Stewart, J., concurring in the judgment). *See also Revised Report of the Judicial Conference Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue*, 87 F.R.D. 519, 524 (1980).

The first issue that we must determine is whether PN has a first amendment right of access to the hearings on the pretrial motions to suppress evidence and to dismiss the indictments on due process and entrapment grounds. *Cf. Branzburg v. Hayes*, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). Although the Supreme Court has not decided this specific issue, it has decided analogous issues. *Gannett* presented the same factual situation as this case, but the Court shed little light on the existence of a first amendment right of access. The majority assumed, without deciding, that the first amendment provided for such a right, but found that it had not been abridged. *See* 443 U.S. at 392, 99 S.Ct. at 2911. The dissent found that any first amendment right of access was no greater than that protected by the sixth amendment. *See id.* at 447, 99 S.Ct. at 2940 (Blackmun, J., concurring in part and dissenting in part). Justices Powell and Rehnquist stated their views on any first amendment right of access, but without extensive analysis. *See id.* at 397, 99 S.Ct. at 2914 (Powell, J., concurring) (first amendment right of access); *id.* at 403, 405, 99 S.Ct. at 2917, 2918 (Rehnquist, J., concurring) (no first amendment right of access).

In *Richmond Newspapers*, the Court was presented with a different factual situation, but addressed the existence of a right of access under the first amendment. Thus, we believe that the Court's analysis of the first amendment in *Richmond Newspapers*

is relevant to the issue here presented, that is, access to pretrial criminal hearings. However, the difficulty is that, while seven Justices agreed the first amendment applies to trials, no rationale commanded a majority. Thus, we may look to cases other than *Richmond Newspapers* for guidance, although we consider the opinions in *Richmond Newspapers* to be the more pertinent, without any one being controlling.

■ *Richmond Newspapers* relies in part on history to find a first amendment right of access to criminal trials. We do not think that historical analysis is relevant in determining whether there is a first amendment right of access to pretrial criminal proceedings. We recognize that, at common law, the public apparently had no right to attend pretrial criminal proceedings. *See Gannett*, 443 U.S. at 387–91, 99 S.Ct. at 2909–11. *But see* Fenner & Koley, *Access to Judicial Proceedings: To* Richmond Newspapers *and Beyond*, 16 Harv.C. R.–C.L.L.Rev. 415, 434 (1981). On the other hand, there was no counterpart at common law to the modern suppression hearing. *See Gannett*, 443 U.S. at 437, 99 S.Ct. at 2934 (Blackmun, J., concurring in part and dissenting in part). And it is clear that the relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years. Thus, because the Supreme Court has accepted the view that the first amendment is to be interpreted in light of current values and conditions, *see Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 386–95, 89 S.Ct. 1794, 1804–09, 23 L.Ed.2d 371 (1969), we proceed to examine the current role of the first amendment and the societal interests in open pretrial criminal proceedings.

■■ The values that the first amendment seeks to promote are implicated in the question whether there is a right of access to pretrial criminal proceedings. The plurality opinion in *Richmond Newspapers* refers to the right to receive information, *see* 448 U.S. at 575–76, 100 S.Ct. at 2826–27, and certainly one underlying purpose of the first amendment is to protect the inter-

change of ideas, *see* T. Emerson, The System of Freedom of Expression 7 (1970). It is true that the Constitution explicitly provides neither a right of access nor a right to receive information. However, as the plurality opinion pointed out in demonstrating the right of access to trials, both the concept of penumbral guarantees and the ninth amendment support the existence of rights not explicitly mentioned in the Constitution. *See* 448 U.S. at 575, 579 n.15, 100 S.Ct. at 2826, 2828 n.15 (plurality opinion). Quoting from *Branzburg*, the plurality opinion stated that, " 'without some protection for seeking out the news, freedom of the press could be eviscerated.' " 448 U.S. at 576, 100 S.Ct. at 2827 (quoting 408 U.S. at 681, 92 S.Ct. at 2656). *See also id.* at 575, 100 S.Ct. at 2826 (first amendment embodies a "purpose of assuring freedom of communication on matters relating to the functioning of government.").

In his concurring opinion, Justice Brennan uses a different analysis, starting with the premise that the structure of our government places communication as an "indispensable element." *Id.* at 588 n.4, 597, 100 S.Ct. at 2833 n.4, 2839 (Brennan, J., concurring in the judgment). Justice Brennan noted that the first amendment "has a *structural* role to play in securing and fostering" communications necessary for the existence of our democracy. *See id.* at 587, 100 S.Ct. at 2833 (emphasis in original). An "indispensable condition[ ] of meaningful communication" is the right to gather information. *Id.* at 588, 100 S.Ct. at 2833. Thus, both the plurality and Justice Brennan suggest that the proper approach to determining whether there is a first amendment right of access to pretrial criminal proceedings is to examine the importance to our society of open pretrial criminal proceedings.

The *Richmond Newspapers* Court found open court proceedings to be mandated by at least six societal interests. First, public access to criminal proceedings promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. *See id.* at 572, 100 S.Ct. at 2825 (plurality opinion); *id.* at 584, 100 S.Ct. at 2831 (Stevens, J., concurring); *id.* at 595–96, 100 S.Ct. at 2838–39 (Brennan, J., concurring in the judgment). This public access, and the knowledge gained thereby, serve an important "educative" interest. *See id.* at 572, 100 S.Ct. at 2825 (plurality opinion). Second, public access to criminal proceedings gives "the assurance that the proceedings were conducted fairly to all concerned" and promotes the public "perception of fairness." *Id.* at 569, 570, 100 S.Ct. at 2823, 2824 (plurality opinion). Public confidence in and respect for the judicial system can be achieved only by permitting full public view of the proceedings. *Id.* at 595, 100 S.Ct. at 2838 (Brennan, J., concurring in the judgment). Third, public access to criminal proceedings has a "significant community therapeutic value" because it provides an "outlet for community concern, hostility, and emotion." *Id.* at 570–71, 100 S.Ct. at 2824–25 (plurality opinion). Fourth, public access to criminal proceedings serves as a check on corrupt practices by exposing the judicial process to public scrutiny, thus discouraging decisions based on secret bias or partiality. *See id.* at 569, 100 S.Ct. at 2823 (plurality opinion). Fifth, public access to criminal proceedings enhances the performance of all involved. *See id.* at 569 n.7, 100 S.Ct. at 2823 n.7 (plurality opinion). Finally, public access to criminal proceedings discourages perjury. *See id.* at 596–97, 100 S.Ct. at 2839–40 (Brennan, J., concurring in the judgment).

We believe that these interests are also present in the context of pretrial criminal proceedings and support a first amendment right to attend such proceedings. Both the Supreme Court and this court have recognized that a pretrial criminal hearing often is the most critical stage of a criminal proceeding. *See Gannett*, 443 U.S. at 397 n.1, 99 S.Ct. at 2914 n.1 (Powell, J., concurring); *id.* at 434–39, 99 S.Ct. at 2933–35 (Blackmun, J., concurring in part and dissenting in part); *Cianfrani*, 573 F.2d at 850 (relying on sixth amendment for finding a right of access to pretrial suppression proceedings; implicitly overruled by *Gannett* ). Deci-

sions reached at the pretrial hearings often determine whether the defendant or the Government wants to proceed to trial. In many cases, the pretrial hearing is the only adversary proceeding the accused will have in resolving his case. *See Gannett*, 443 U.S. at 433–36, 99 S.Ct. at 2932–34 (Blackmun, J., concurring in part and dissenting in part). Indeed, most criminal prosecutions consist solely of pretrial procedures. *See id.* at 397, 99 S.Ct. at 2914 (Burger, C. J., concurring) (85% of all criminal charges are resolved by guilty pleas); *id.* at 397 n.1, 99 S.Ct. at 2914 n.1 (Powell, J., concurring). The public's vital interest in evaluating the public officials who work in the criminal justice system cannot be fully vindicated unless the public and press can attend pretrial hearings. Otherwise, much of the work of prosecutors and trial judges may go unscrutinized.

Of equal importance, pretrial hearings in criminal cases typically involve objections to the propriety of police conduct. In fact, the pretrial hearing may be the only point in the trial process at which the conduct of law enforcement officers is at issue. Because such conduct frequently occurs outside the public view, *see Bennett v. Rundle*, 419 F.2d 599, 606 (3d Cir. 1969) (in banc), beneficial public scrutiny may never take place if not at the hearing itself.

▮ Thus, the same societal interests and structural arguments that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply with equal force to pretrial criminal proceedings. The public has some first amendment right of access "to information about how one of the three great political branches of our government conducts its business." *Cianfrani*, 573 F.2d at 862 (Gibbons, J., concurring). We believe that, under the reasoning adopted by the Court in *Richmond Newspapers*, the public has a first amendment right of access to pretrial suppression, due process, and entrapment hearings. *But cf. San Jose Mercury-News v. Municipal Court of Santa Clara County*, 30 Cal.3d 498, 638 P.2d 655, 179 Cal.Rptr. 772 (1982)(a right of access to preliminary hearings, as distin-

guished from suppression hearings, does not arise under federal Constitution). We are not called upon to decide the application of the first amendment right to other pretrial criminal proceedings or to situations involving interests other than those of the defendants' fair-trial rights.

**B.** *Procedural Prerequisites to Closure*

That there is a first amendment right of access to pretrial criminal proceedings is not determinative of whether PN had a right of access to the closed proceedings in this case. PN contends that the public is entitled to due process-type procedural rights before closing a pretrial criminal hearing. PN argues that minimum constitutional standards require that the public be given notice and an opportunity for a hearing before a pretrial hearing is closed.

It is true that individual notice of a hearing on the closure motion would "assure the fullest presentation and consideration of the matter which the circumstances permit.... Certainly, the failure to invite participation of the party seeking to exercise First Amendment rights ... substantially imperils the protection which the Amendment seeks to assure." *Carroll v. President of Princess Anne*, 393 U.S. 175, 181, 184, 89 S.Ct. 347, 351, 353, 21 L.Ed.2d 325 (1968). It is also true that a procedural right of notice prior to any infringement of first amendment rights has been established in some circumstances. *See, e.g., Freedman v. Maryland*, 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649 (1965)(obscenity); *United States v. Schiavo*, 504 F.2d 1, 7–8 (3d Cir.)(in banc) (gag orders), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974).

▮ On the other hand, what process is due depends upon the right involved and the competing governmental interests implicated. In *Matthews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), the Court identified the factors used to establish the parameters of the due process right to notice:

[I]dentification of the specific dictates of due process generally requires considera-

tion of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

■ The importance of the interest affected by closure of a pretrial criminal proceeding is underscored by the uniquely irretrievable loss that would be incurred by the public through the denial of the right to attend the hearing. *See, e.g., Gannett,* 443 U.S. at 442 n.17, 99 S.Ct. at 2937 n.17 (Blackmun, J., concurring in part and dissenting in part); *Nebraska Press,* 427 U.S. at 561, 96 S.Ct. at 2803. The interests of the public will not necessarily be represented either by defendants or prosecutors. The defendant's interests will obviously not coincide with that of the press. The Government, quite properly, has the duty to ensure a fair trial and has an obvious interest in securing a conviction that will withstand appeal; reversal of a conviction because of prejudicial publicity, though perhaps rare, poses a risk to a successful prosecution. We therefore cannot expect the Government to vindicate the public's first amendment rights. Nor should the trial judge be placed "in the position of sole guardian of first amendment interests even against the express wishes of both parties." Younger, *The* Sheppard *Mandate Today: A Trial Judge's Perspective,* 56 Neb.L.Rev. 1, 6–7 (1977). We believe that due process requires some notice to the public before a trial court may close a pretrial criminal proceeding. *Cf. Schiavo,* 504 F.2d at 12 (Adams, J., concurring) (first amendment considerations dictate some procedural requirements). That some notice is required, however, does not tell us the form that such notice should take.

None of the Justices' statements in *Gannett* and *Richmond Newspapers* support PN's suggested procedures. The plurality opinion in *Richmond Newspapers* did not outline the procedure by which the existence or absence of an overriding interest in a closed proceeding is to be determined. Some members of the Court, however, addressed procedural matters in *Gannett.* Justice Blackmun, writing for four Justices, stated:

> I would conclude that any person removed from a court should be given a reasonable opportunity to state his objections prior to the effectiveness of the order. This opportunity need not take the form of an evidentiary hearing; it need not encompass extended legal argument that results in delay; and the public need not be given prior notice that a closure order will be considered at a given time and place. But where a member of the public contemporaneously objects, the court should provide a reasonable opportunity to that person to state his objection.

443 U.S. at 446, 99 S.Ct. at 2939. Justice Blackmun's opinion appears to assume that closure motions will be made in open court, but because he obviously does not believe that the Constitution requires advance notice concerning the consideration of a closure motion, it is unlikely that he believes there is any constitutional requirement that defendant must make his closure motion in open court. Justice Powell also apparently assumed that a motion for closure would be made in open court:

> [The opportunity for representatives of the press and public to be heard on the question of their exclusion] extends no farther than the persons actually present at the time the motion for closure is made, for the alternative would require substantial delays in trial and pretrial proceedings while notice was given to the public. Upon timely objection to the granting of the motion, it is incumbent upon the trial court to afford those present a reasonable opportunity to be heard on the question whether the defendant is likely to be deprived of a fair trial if the press and public are permitted to remain in attendance.

443 U.S. at 401, 99 S.Ct. at 2916 (Powell, J., concurring). Justice Powell was obviously sensitive to the exigencies of trial court administration, but it is unclear how he would treat a motion to close made other than in open court.

Most of the Justices hypothesized a setting where the closure motion is made in open court. We do not believe, however, that their discussions of the hearings premised on such notice is an exclusive formulation of the notice to be required. As the facts of this case demonstrate, the motion for closure will not always be made in open court. The issue whether to conduct closed hearings is likely to arise by written submissions or in chamber conferences prior to any open proceedings. We see no need for the parties to repeat their request in open court simply for the benefit of those members of the public who happen to be there if no notice is necessary to assure the presence of interested members of the public.

 We thus are unpersuaded that the Constitution requires any individual notice to the press or to the public before a district court entertains a motion to close a pretrial criminal proceeding. Individual notice is unwarranted and impractical in the context of the administration of criminal litigation. PN argues, however, that the right to a hearing cannot be limited to those members of the public "actually present" at the time a closure order is made. *But see* Judicial Conference Advisory Committee on the Federal Rules of Criminal Procedure, Proposed Amendments to the Federal Rules of Criminal Procedure, rule 43.1(b). We agree that such a rule would too easily permit a loss of the public's rights. First, the closure motion itself might be made in writing under seal or in an in-chambers conference. The press should not be expected to "camp out" in the

hallway in order to ascertain whether evidentiary proceedings are being conducted in chambers. Second, even if the motion is made in open court, it may be made at a time of day when interested members of the public are not present. We believe that some notice must be given that is calculated to inform the public that its constitutional rights may be implicated in a particular criminal proceeding.

 The case dockets maintained by the clerk of the district court are public records. A motion requesting closure of pretrial criminal proceedings will at some point be entered in the docket. Under our supervisory powers, we will require docketing of such motions to be made sufficiently in advance of any hearing on or disposition of the closure motion to afford interested members of the public an opportunity to intervene and present their views to the court.[6] The district courts should take whatever steps are necessary to ensure that the docket entries are made a reasonable time before the closure motion is acted upon, the reasonable time being dictated by the circumstances. The district courts may wish to consider adopting a local rule implementing our directive.[7]

PN agrees that notice can take the form of a docket entry and that where sufficient advance notice is given, nothing further should be required. Nevertheless, PN maintains that, in light of the significant first amendment interests at stake, it is not overly burdensome to require that district courts establish a procedure for notification of the media whenever a motion for closure is presented. PN contends that representatives of the media should be expected to carry the burden of providing actual notice to interested parties once given notice of the possibility of closure. PN thus suggests that a district court could, for example, notify a designated nonparty individual or

---

6. We do not minimize the practical burden that remains after notice on those seeking to resist a closure motion in situations where they are not parties to the underlying motion.

7. We do not believe that this particular notice requirement will be a great burden to the dis-

trict courts or to the clerks of the district courts in this circuit. The great majority of criminal cases in federal court attract no publicity while moving through our criminal justice system. Motions for closure are made infrequently.

institution of the possibility of closure; that party then could provide notice to other representatives of the press and public.

We believe that such a procedure, whereby the district court personnel act as "stringers" for the press, is unworkable. Nor are we convinced that publication in an appropriate legal publication would serve as better notice than a docket entry. We realize, however, that notice by docket entry may sometimes prove impracticable under the exigencies that surround criminal proceedings. When, for example, a suppression hearing must be held during trial and closure is requested, an alternate and more expeditious method of notice may be permissible. We need not decide this issue, however, because this case does not present such circumstances.[8]

The initial requests for closure of the July evidentiary proceedings in the district court were contained in letters written to the trial court. These letters were not docketed until August 1981. Indeed, counsel's written submissions requesting closure were not posted on the docket until discovered by amici curiae in preparation for this appeal.

The district court found that the entire subject matter raised by the suppression motions was too sensitive for public dissemination. The motions themselves, the Government's responses, and the testimony were sealed and impounded. Amici curiae concede that at the time of the relevant events the record revealed nothing to indicate that closure was being sought. Under these circumstances, even the most vigilant of reporters could not have known that their right of access was being denied because undocketed materials formed the basis for the district court's actions. Had this material been posted on the docket, the public and press would have been able to learn that there was a possibility of closure

and to take timely action if they wished. Notice in advance of closure would have been beneficial to the district court in that it would have allowed PN to assert its case before the court, helping it to balance properly the defendants' right to a fair trial and the public's right to attend and observe important court proceedings.

■■ Amici curiae contend that these minor procedural lapses in record-keeping in the clerk's office do not warrant reversal. We believe, however, that proper posting is necessary for notice to the public and thus that the procedures followed by the district court in regard to closure of the July 18 hearing were deficient.

### C. Consideration of Alternatives

■■ The district court also erred in closing both the July 18 and the September 24 hearings by not articulating its consideration of alternatives to closure on the record. There is a fairly broad consensus that, before a court closes a pretrial criminal hearing, it must at least consider alternatives to closure and explicitly state its reasons on the record for rejecting such alternatives. See Gannett, 443 U.S. at 400, 99 S.Ct. at 2916 (Powell, J., concurring) (must consider the alternative means "reasonably available"); id. at 441, 99 S.Ct. at 2936 (Blackmun, J., concurring in part and dissenting in part) (before closing, there must be "a substantial probability" that alternatives to closure will not preserve fair trial); In re United States ex rel. Pulitzer Publishing Co., 635 F.2d 676, 677 (8th Cir. 1980) (in-chambers voir dire of jurors inappropriate in absence of inquiry as to alternate solutions); id. at 680–81 (Gibson, J., concurring) (adopting Justice Blackmun's Gannett standards); United States v. Layton, 519 F.Supp. 959, 961 (N.D.Cal.1981) (alternatives deemed sufficient); United States v. Civella, 493 F.Supp. 786, 789 (W.D.Mo.1980) (adopting Justice Blackmun's Gannett stan-

---

8. Amici curiae suggest that, if the written motion to close has not been docketed, the hearing should begin in open court with the motion to close presented orally. Oral motions for closure that are made outside of the public's hearing should be renewed in open court before being acted on. We need not pass on the usefulness of such requirements. We believe that, in both circumstances, a docket entry is warranted when the motion is made. We need not decide, however, what the appropriate procedure would be where the suppression and closure motions are made during trial.

dards); *State v. Allen*, 73 N.J. 132, 373 A.2d 377, 383 (1977) (court should first resort to alternatives); 45 Fed.Reg. 69,214 (1980) (to be codified at 28 C.F.R. § 50.9) (a Government attorney shall not move or consent to closure unless "no reasonable alternative exists"); *Revised Free Press—Fair Trial Guidelines of the Judicial Conference of the United States—1980*, 87 F.R.D. 525, 535 (1980) (court shall make specific findings for the record "that reasonable alternatives to closure will not adequately protect defendant's right to a fair trial"); Judicial Conference Advisory Committee on the Federal Rules of Criminal Procedure, Proposed Amendments to the Federal Rules of Criminal Procedure, rule 43.1(b)(2) & Advisory Note (court must make findings for the record that the prejudicial effect "cannot be avoided by any reasonable alternative means" other than closure); American Bar Association Standards Relating to the Administration of Justice: Fair Trial and Free Press, Standard 8–3.2 (2d ed. 1980) (court may close only if it finds the prejudicial effect of the information to be disclosed "cannot be avoided by any reasonable alternative means"); 24 Vill.L.Rev. 107, 120 (1979) ("alternative measures for insuring a fair trial would be largely ineffective").

The *Gannett* Court did not hold that consideration of alternatives to closure was constitutionally required. *See Gannett*, 55 A.D.2d 107, 389 N.Y.S.2d 719 (1976), *modified*, 43 N.Y.2d 370, 372 N.E.2d 544, 401 N.Y.S.2d 756 (1977), *affirmed*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (Supreme Court approved of trial court's procedures, even though no alternatives were apparently considered); 86 Dickinson L.Rev. 177, 182 nn. 38 & 39 (1981). The *Gannett* Court merely concluded that the trial judge in that case had done whatever was required by the first amendment by engaging in an assessment of the competing societal interests involved. *See* 443 U.S. at 392–93, 99 S.Ct. at 2911–12. However, the majority opinion and Justice Powell's concurring opinion allude to the articulated reasoning of the trial judge as a ground for upholding the decision to conduct a closed hearing. *See id.; id.* at 402, 99 S.Ct. at 2917 (Powell, J., concurring). Additionally,

the four Justices who dissented in *Gannett* declared that "the court should state on the record its findings concerning the need for closure so that a reviewing court may be adequately informed." *Id.* at 446, 99 S.Ct. at 2939 (Blackmun, J., concurring in part and dissenting in part) (sixth amendment context). Moreover, a majority of the Justices stressed the need to consider alternatives. *See id.* at 400, 99 S.Ct. at 2916 (Powell, J., concurring); *id.* at 441, 99 S.Ct. at 2936 (Blackmun, J., concurring in part and dissenting in part).

█ We need not decide whether the requirement of rejecting alternatives on the record is constitutionally required, for we require under our supervisory powers that, before closing a pretrial criminal proceeding, the district court must in a timely manner state its reasons on the record for rejecting alternatives to closure. *See Schiavo*, 504 F.2d at 7 (using supervisory power to require that "the [gag] order should be reduced to written form, stating specifically the terms of the order and the reasons therefor, and entered on the district court docket"); *United States v. Edwards*, 430 A.2d 1321, 1346 (D.C.1981) (first amendment right of access to pretrial criminal proceedings requires that, before closure, court must find that there are no alternative means reasonably available). *Cf. Richmond Newspapers*, 448 U.S. at 581 (plurality opinion) (first amendment access right may not be abridged "[a]bsent an overriding interest articulated in findings"); *Schiavo*, 504 F.2d at 15 (Adams, J., concurring) ("[T]he decision should reveal the facts and reasons supporting it, and the ultimate order should be in written form so as to obviate any ambiguity created by less formal, oral orders."). *See also Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 980 (3d Cir. 1981) (requiring, under supervisory powers, district courts to state explicitly the legal basis and findings that are necessary to show that documents are exempt or disclosable under the Freedom of Information Act).

The district court must make specific findings to support its conclusion that other means will be insufficient to preserve the defendant's rights and that closure is neces-

sary to protect effectively against the perceived harm. Although sequestration is available only at trial, other methods of protecting the defendant's rights must be considered before closing a pretrial criminal hearing: for example, holding the hearing immediately prior to sequestering the jury, or using voir dire, continuance, severance, change of venue, additional peremptory challenges, and admonitory instructions to the jury to lessen the possibility of prejudice. The articulation requirement is essential for meaningful appellate review of trial court decisions on motions to hold closed hearings. Regardless of the degree of discretion to be allowed trial courts in dealing with requests for closure, the discretion should be subject to review by the courts of appeals and, if necessary, by the Supreme Court. If closure is granted, the reviewing court must be able to determine whether the trial court has abused its discretion.

PN argues that the district court failed to consider any alternatives to closure of the pretrial proceedings and that this failure warrants reversal. We have reviewed both the public and sealed memoranda. The district court made no findings concerning alternatives, and thus we do not know whether any consideration was given to the use of careful voir dire examination to investigate the perceived effect of disclosure of the "sensitive" matters dealt with at the closed pretrial hearings; whether the district court considered a transfer of the action to a venue less exposed to publicity concerning the individual defendants; or whether the district court considered a continuance of all scheduled trials.

We need not decide whether the district court abused its discretion in deciding to close the evidentiary hearing rather than to use some alternative to closure. In the absence of specific findings, we have no assurance that the district court considered any alternatives to closure. The district court therefore improperly closed the July 18 and September 24 hearings.[9] Thus, it was error for the district court to deny PN access to a transcript of the July 18 hearing.

### V. *Release of Sealed Materials*

PN urges that we order the district court to release immediately the transcripts of all in camera hearings conducted to date. The parties bring to our attention that there were several in-chamber conferences other than the hearings on July 18 and September 24. The defendants' suppression motions, the Government's responses, and the district court's supplemental opinion remain sealed and impounded.

Apart from the motion filed on July 21, however, PN did not seek release by the district court of any of the information that it has sealed or that it received in camera. The record does not disclose any similar request by any other person. Thus, no application to the district court has been made by PN for most of the materials that it seeks here. We believe that the district court should in the first instance consider any requests for release. As to the July 22 and the September 24 orders, we will vacate.

### VI.

The district court's orders of July 22 and September 24, 1980 will be vacated.

---

9. We need not decide whether the notice to PN of the September 24 hearing was sufficient.