UNITED STATES of America

v.

RAFFOUL, Hanna Badaoui.

Appeal of The PITTSBURGH PRESS COMPANY.

No. 86–3605.

United States Court of Appeals, Third Circuit.

Argued March 19, 1987.

Decided Aug. 14, 1987.

Scott E. Henderson, Kevin C. Abbott, Thorp, Reed and Armstrong, Pittsburgh, Pa., for Pittsburgh Press Co.; Henry S. Hoberman (argued), Bruce W. Sanford, Baker and Hostetler, Washington, D.C., of counsel.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Bonnie R. Schlueter (argued), U.S. Atty's. Office, W.D. Pa., Pittsburgh, Pa., for U.S.

Before HIGGINBOTHAM, MANSMANN, and ROSENN, Circuit Judges.

### OPINION OF THE COURT

MANSMANN, Circuit Judge.

This case presents the question of what procedure is appropriate to protect the First Amendment rights of the press and the public who are present in court when a closure motion is made during the course of a criminal trial. We expressly reserved that question in *United States v. Criden*, 675 F.2d 550, 560 (3d Cir.1982) (*Criden II*). In *Criden II* we required that motions for closure of pretrial hearings must be posted on the docket and that, before closing a pretrial hearing, the court must consider alternatives to closure and state on the record its reasons for rejecting them. We now extend those requirements to closure motions made during the course of a criminal trial.

Furthermore, we hold that closure motions made out of the public's hearing, *e.g.*, during a conference in chambers, must be renewed in open court before disposition. Representatives of the press and public who are present in the courtroom and subject to removal as a result of a closure order must, upon contemporaneous motion, be allowed a hearing on their objections

within a reasonable time in advance of closure. Members of the press and public who are removed from the courtroom retain the right to a hearing upon petitioning for access to sealed transcripts.

Because the appellant Pittsburgh Press was not afforded a hearing on its objections to closure or on its petition for access to transcripts, we will vacate the order of the district court and remand for a hearing on whether there still exists adequate reason to deny access to the sealed transcripts.

## I.

A reporter for the Pittsburgh Press Company ("the Press"), Janet Williams, attended the criminal trial of defendant Hanna Badaoui Raffoul during the opening statements and other preliminary proceedings. Raffoul was charged with importing heroin into the United States. The government's evidence showed that on June 15, 1986, Raffoul, a Lebanese native who had previously lived in the United States, arrived in Pittsburgh by airplane and with heroin concealed in a suitcase.

Raffoul, in attempting to establish his defense of duress, testified on direct examination, with the aid of an interpreter, that two armed individuals had threatened to kill him and his wife and children in Lebanon unless he agreed to transport "something" to the United States. Raffoul testified that there are no police in Lebanon to protect him and that "they are running the show there." When asked "[w]ho is running the show there," Raffoul refused to answer on the ground that "[t]hey will kill [my] children."

The district judge ordered Raffoul to answer the question and threatened to hold him in contempt if he refused to answer on cross-examination. The court then recessed to give defense counsel an opportunity to confer with his client. During the recess a conference was held in chambers during which the judge suggested that he would entertain a closure motion by the defendant.

Newsreporter Janet Williams was not present in the courtroom during the beginning of Mr. Raffoul's testimony. She returned to the courtroom during the recess when the conference in chambers was taking place. In her affidavit she said that the courtroom clerk cleared the courtroom during the recess and that Ms. Williams was not permitted to object to the court. The record shows that subsequently, defense counsel moved in closed court for closure and the court granted the motion apparently on the basis of information obtained in conference and at the sidebar regarding threats to Raffoul's family. The court then formally ordered the courtroom closed and locked and observed that there was no one in the courtroom at that time. Defense counsel responded, "Judge, the Marshals I think already made sure of that." The courtroom was closed during Raffoul's testimony on September 16, 1986 and reopened during the remainder of the trial.

During the course of the closed portion of the trial, counsel for the Press appeared in order to object to closure and to request a hearing. Counsel was denied access to the courtroom. Approximately 30 minutes later during a recess the district judge refused to hear counsel's objections and requested that counsel file a motion with the court. On the following day counsel complied with the court's directive by filing a Petition to Intervene and for Access to the Sealed Transcript. Counsel requested a hearing on the petition.

On September 18, 1986 the court filed an order denying the petition without a hearing, reasoning that the right of public access was overridden in this case by "a grave risk of serious injury to innocent third parties." On October 2, 1986, the Press filed a motion to reconsider the denial of access to the sealed transcripts. The motion to reconsider was denied, again without a hearing, in an order filed by the court on October 3, 1986.

## II.

■ The Press appeals from the district court's denial of reconsideration of its motion for access to sealed transcripts of a

portion of the criminal trial of Hanna Badaoui Raffoul. An order granting or denying access to portions of a trial record is appealable as a final order pursuant to 28 U.S.C. § 1291. *United States v. Smith*, 787 F.2d 111, 113 (3d Cir.1986) (*Smith II*). The Press asserts on appeal that it was deprived of significant First Amendment rights without due process of law, first when its reporter was removed from the courtroom over her objection, without prior notice, and without a hearing on the question of closure; and second, when without a hearing the Press was denied access to the sealed transcripts. Raffoul's attorney has not participated in this appeal, and the government has focused solely on the procedural aspects of the case.

■ The first issue, closure of the courtroom itself, appears to be moot because no order of this court could remedy any error of the district court in closing the courtroom. However, in a number of cases involving press access to judicial proceedings the Supreme Court, as have we, has addressed the issues even though they are technically moot. The jurisprudential theory for review has been that the issues are "capable of repetition yet evading review." *See, e.g., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 546–47, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). That exception for mootness is applicable here. Certainly the press and public will continue to seek access to criminal trials, and within the very short time that closure orders are generally in effect, it is not likely that appellate review would ever be available. Accordingly, we will consider the appellant's objections on the merits.

The decision to close a portion of a trial is a discretionary one. *Id.* at 113. However, the adequacy of the procedures employed by the district court is a question of law over which we have plenary review. We turn now to the procedural protections to which the press and public are entitled when a motion for closure is made during a criminal trial.

### III.

■ A party is entitled to procedural due process only if there has been a deprivation of a protected interest. *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316 (3d Cir.1982). The First Amendment guarantees the right of the press and the public to attend a criminal trial. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980). In addition, the common law right of the public to inspect and copy judicial records antedates the Constitution. *United States v. Criden*, 648 F.2d 814, 819 (3d Cir.1981) (*"Criden I"*). Having established that the press has an interest in continued attendance at a criminal trial and in access to the transcripts, we conclude that the due process clause of the fourteenth amendment prohibits exclusion of the press and public from a criminal trial without affording full and fair consideration to the public's interest in maintaining an open proceeding. We must determine whether the press was afforded adequate procedural due process before its representative was removed from the courtroom on September 16, 1986.

The minimum requirements of due process are notice and an opportunity for a hearing appropriate to the nature of the case. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The purpose of notice under the due process clause is to apprise an affected individual of, and permit adequate preparation for, an impending hearing which may affect their legally protected interests. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978).

The most important requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir.1984). Beyond this the exact procedural protections guaranteed by due process vary according to the specific factual context presented. *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960). The concept is flexible, calling for procedural protection as dictated by particular circumstances. *Kahn v. United States*, 753 F.2d at 1218.

We were confronted with a similar controversy arising out of the exclusion of the

press from a pretrial hearing in *United States v. Criden* (*Criden II*), 675 F.2d 550 (3d Cir.1982). There we established the minimum process due when a motion is made before trial for a closure of a pretrial hearing. We held there that motions seeking closure of pretrial proceedings in criminal cases must be made and entered on the district court's docket "sufficiently in advance of any hearing on or disposition of the closure motion to afford interested members of the public an opportunity to intervene and present their views to the court." *Id.* at 559 (footnote omitted).

■ The Press does not argue that personal notice to it was inadequate but argues that immediate docketing of a closure motion should be required as a general matter to protect the rights of press and public. The Press also insists that it was entitled as a matter of right to a hearing on its objections to closure. The Press urges us to extend to motions made during trial the requirement that docketing must occur sufficiently in advance of the hearing or disposition to afford members of the press and public not present in the courtroom the opportunity for a hearing on their objections prior to the closure.

The government appears to concede that the appellant Press was entitled to notice and a hearing regarding its objections to closure so that if Williams was in fact removed without an opportunity to be heard—a factual question which, were this a live controversy, would require a remand—then there was error to that extent. The government does not oppose the extension of the docketing requirement to motions for closure made during the course of a criminal trial. However, the government urges that the right to a hearing in advance of closure should extend only to those who are actually present in court and therefore subject to removal at the time the motion for closure is made. The government expresses no interest in whether the transcripts are unsealed but suggests that any order releasing the transcripts should be stayed until Raffoul, who has not filed a brief in this appeal, has had an opportunity to be heard in opposition.

## IV.

We must first decide whether the Press was entitled to a *pre*-closure hearing on the question of its exclusion from a criminal trial. We must also decide whether the Press was entitled to a hearing on its petition for access to transcripts.

Three factors must be considered in determining whether a due process hearing must occur before or after the deprivation at issue: first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail. *Application of U.S. for an Order Authorizing a Tel. Tracer*, 610 F.2d 1148 (3d Cir.1979).

■ The right at stake here, that of access to criminal trials, plays a particularly significant role in the functioning of the judicial process and the government as a whole. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). Although the right of access to criminal trials is of constitutional stature, it is not, however, absolute. *Id.; United States v. Smith*, 787 F.2d 111, 116 (3d Cir.1986) (*Smith II*). A trial judge may, in the interest of justice, impose reasonable limitations on access to a trial. *Id.* The right is limited by the constitutional right of defendants to a fair trial and by the needs of the government to obtain just convictions and to preserve the confidentiality of sensitive information and the identity of informants. *Gannett Co. v. DePasquale*, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915, 61 L.Ed.2d 608 (1979) (Powell, J., concurring). The risk of serious injury to third parties from disclosure may outweigh the interest of the public in access to a limited portion of the trial. *Smith II*, 787 F.2d at 116. The government's interest in this appeal is the avoidance of additional fiscal and administrative burdens that

would be caused by substantial delays in trial proceedings.

We turn now to the task of arriving at an appropriate accommodation of these competing interests.

### A.

"For a case-by-case approach to be meaningful, representatives of the press and general public 'must be given the opportunity to be heard on the question of their exclusion.'" *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, n. 25, 73 L.Ed.2d 248 (1982), quoting *Gannett,* 443 U.S. at 401, 99 S.Ct. at 2916 (Powell, J., concurring). Justice Powell recognized that "if the constitutional right of the press and public to have access is to have substance, representatives of these groups must be given an opportunity to be heard on the question of their exclusion." *Gannett* at 401, 99 S.Ct. at 2916 (Powell, J., concurring).

In *Criden II,* with respect to pretrial closure motions we considered and rejected the argument that the right to a hearing should be "limited to those members of the public 'actually present' at the time the closure order is made." 675 F.2d at 559. We required notice by docket entry in advance of any hearing or disposition. However, we noted there that where a closure motion is made during trial notice by docket entry might prove impracticable under the exigencies that surround criminal proceedings. *Id.* We considered the possibility that an alternate and more expeditious method of notice might be permissible under those circumstances. We did not, however, decide the issue because it was not presented in that case. *Id.* at 560.

■ In balancing the competing interests here, we hold first that the public and press who are excluded from a criminal trial have the right to a hearing at a reasonable time regarding access to the transcripts. The hearing shall, to the extent practicable, be held within a reasonable time after the filing of the petition; but the hearing may be subject to appropriate conditions or restrictions responsive among other things to the requirements of the efficient conduct of ongoing proceedings.

■ Second, we find that an independent basis exists for requiring a pre-closure hearing for those present in the courtroom and subject to removal upon closure. In determining whether due process requires a pre-closure hearing, "a showing of a likelihood of irreparable harm resulting from the lack of a predeprivation hearing is a private interest which countervails *any* public interest in streamlined administration." *Kahn v. United States,* 753 F.2d at 1219 (emphasis in original). We believe a likelihood of irreparable harm exists when those members of the press and public already present in the courtroom are excluded without a hearing.

Open trials enable the public to scrutinize the performance and demeanor of police, prosecutors, and the judiciary and to detect bias or incompetency. "Every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer,* 137 Mass. 392 (1884) (Holmes, J.). Similarly, any person may as amicus curiae inform the court if he thinks the proceedings are in error. *See Gannett,* 443 U.S. at 442 n. 7, 99 S.Ct. at 2937 n. 7. As Justice Brennan has observed:

> Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.

*Globe Newspaper Co. v. Superior Court,* 457 U.S. at 606, 102 S.Ct. at 2619–20.

■ Additionally, members of the press and public have the right to demand that their exclusion extend no farther than

is likely to achieve the goals of protection of the defendant's right to a fair trial and the state's interest in confidentiality, *Gannett*, 443 U.S. at 401, 99 S.Ct. at 2916 (Powell, J. concurring), or prevention of harm to seriously endangered third parties. *Smith II*, at 116. Members of the press and public who object to closure have the responsibility of showing to the court's satisfaction that alternative procedures are available that would eliminate the dangers shown by the defendant and/or the state. *Gannett*, 443 U.S. at 401, 99 S.Ct. at 2916 (Powell, J., concurring).

 Accordingly, we hold that a pre-closure hearing should be granted as a matter of right to persons actually present and subject to removal from the courtroom. We stress, however, that "[t]his opportunity need not take the form of an evidentiary hearing," and "need not encompass extended legal argument that results in delay." *See Gannett*, 443 U.S. at 446, 99 S.Ct. at 2939 (Blackmun, J., concurring in part and dissenting in part). The opportunity is merely to a brief hearing consistent with the interests of justice. Additionally, interested members of the press and public must be permitted a hearing within a reasonable time in order to move for access to sealed transcripts of a closed proceeding.

### B.

 We noted in *Criden II* that we considered a requirement of personal notification of the media whenever a motion is presented to be unworkable. For the reasons set forth in *Criden II* we will not now require personal notice to the media or interested members of the public whenever a motion for closure is made during trial. We will, however, require public notice in the form of immediate docketing of all closure motions. In addition we will require the renewal in open court and before disposition of motions for closure that are made outside of the public's hearing. This is to prevent the recurrence of situations such as occurred in *Criden II* and in this case where even the most vigilant of reporters could not have known that the

right of access was in jeopardy in time to be heard on the question of closure.

 In both cases the motions were made and considered in chambers and undocketed materials formed the basis for the district court's actions. In this case it is asserted that the district court personnel cleared the courtroom before court was reconvened so that no member of the press or public was given notice of the closure motion. Although Press representative Janet Williams received personal notice of the closure, it occurred after the motion was made and had been decided in chambers. Therefore, because she had no opportunity to object. To avoid such a circumstance, we emphasize that the courtroom should not be cleared except upon order of the court after notice and the opportunity to be heard to those contemporaneously present in the courtroom.

### C.

 The Press also asserts that the district court erred in failing to articulate reasons for closure with sufficient specificity. The district court was required to articulate its reasons for closure on the record with "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (*Press-Enterprise I*). At a minimum, those findings should demonstrate "that a closure is essential to preserve higher values [than the right of access] and is narrowly tailored to serve that interest." *Id.* Further, the district court was required "in a timely manner [to] state its reasons on the record for rejecting alternatives to closure." *Criden II*, 675 F.2d at 561.

 In the case before us now, the district court's somewhat brief findings were that (1) "there is a grave risk of serious injury to innocent third paries" which overrides the presumption of public and press access, and (2) "[n]o less restrictive alternatives are available ... which would be sufficient to protect the rights of such third parties." In attacking the first

finding, the appellant states that there is no case which elucidates "how the risk of physical harm to third persons could constitute an 'overriding interest'"; however, this argument is meritless. The risk of physical harm (in this case death) is the best example one could imagine of an overriding interest. The district court's findings were therefore clearly sufficient for this court to "determine whether the closure order was properly entered" in this respect.

With respect to the court's "least restrictive alternative" finding, the appellant suggests that there was a less restrictive alternative because the court could have redacted the transcripts to delete the relevant names and that other alternatives included cautionary instructions and admonitions to witnesses and jurors. None of these suggestions, however, would have protected the defendant from the danger potentially posed by the press and the public's presence at the trial. Therefore, although the legal issues surrounding the right to prevent closure may be "capable of repetition yet evading review," the precise factual nuances of the right to close the underlying criminal trial in a particular case requires "a case-by-case approach." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2621 n. 25, 73 L.Ed.2d 248 (1982). The precise factual question in this case is not capable of repetition. There can be no purpose in remanding to the district court for a purely factual finding on a moot question. Accordingly, we decline to vacate the district court's closure order because of any asserted error in the court's findings.

## D.

In summary, the procedure to be followed in cases where a closure motion is made during a criminal trial in progress is as follows: All motions for closure should be docketed immediately. Motions for closure that are made outside the public's

hearing shall also be renewed in open court before being acted upon and the courtroom shall not be closed except upon the court's order. The trial proceedings shall be interrupted to allow those actually present and objecting to removal to be heard before a closure order is entered. Interested persons must be granted a hearing within a reasonable time upon motion for access to sealed transcripts of the closed proceeding. Before closing the courtroom, the court must consider alternatives to closure and state on the record its reasons for rejecting them.

## IV.

Based on the principles set forth above, we conclude that the Pittsburgh Press was denied due process in this case. Specifically, reporter Janet Williams was given neither timely notice nor an opportunity prior to closure to state her objections to closure or to suggest reasonable alternatives. In addition, once having been excluded, the Press was denied a hearing on its right of access to transcripts.

We must now determine what relief is appropriate in this case within our jurisdictional mandates.[1] Appellant requests that we vacate the seal on the transcripts of the proceeding or require the proponents of closure to establish entitlement to closure of all or portions of the transcripts in accordance with applicable constitutional principles.

The district court determined that there was a grave risk of serious injury absent restriction of public access to Raffoul's testimony. Although the court did not use procedures calculated to protect appellant's right of access, appellant's exclusion from the trial itself cannot be remedied by vacating the closure order. Therefore, because the record is insufficient to permit us to determine whether there may still exist a risk of serious injury to innocent third parties we will not vacate the closure order.

---

**1.** A court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
28 U.S.C.A. § 2106 (1982).

Instead we will reverse the order denying access to the transcripts and we will remand the cause for a hearing, at which Raffoul must be given the opportunity to be represented, on the question of whether prejudice to the defendant or the state or injury to third parties is likely to result if the court unseals the transcript of the closed courtroom proceedings.

At the hearing, Raffoul, if he still desires that the transcript be kept sealed, should be required to demonstrate a compelling interest in keeping the transcript sealed, the absence or unworkability of less restrictive alternatives such as redacting the transcripts, and the effectiveness of keeping the transcript sealed in furthering the compelling interest. If neither the Government nor Raffoul any longer desires that the transcript be kept sealed, then the district court should order that it be unsealed.

The trial court's orders of September 18, 1986 denying the petition for access to the transcripts and of October 3, 1983 denying reconsideration will be reversed. The cause will be remanded for proceedings consistent with this opinion.